UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOSEPH A. MASO and JEANNIE MASO, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 4:14-CV-1885-CEJ |
| | ) |
| FARMERS INSURANCE COMPANY, INC., | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the parties' cross-motions for summary judgment, pursuant to Fed. R. Civ. P. 56(a). Also before the Court is plaintiffs' renewed motion for leave to file an amended complaint. The issues are fully briefed.

### I. Background

Plaintiff Joseph Maso was riding a motorcycle in St. Charles County, Missouri on July 24, 2014, when he crashed into a car driven by Supaporn Buske. Maso was injured in the crash, and he claimed losses in excess of $600,000. At the time of the accident the motorcycle was covered by a policy of insurance issued by defendant Farmers Insurance Company, Inc. Buske's insurer tendered its policy limit of $50,000. Plaintiffs then filed a claim with defendant, invoking the motorcycle policy's provision for underinsured motorist (UIM) coverage. Defendant tendered the motorcycle policy's UIM limit of $100,000, which Maso and his wife Jeannie Maso accepted.

Plaintiffs have two additional insurance policies with defendant. One offers primary coverage for a 2007 Chevrolet Cobalt. The other offers primary coverage

for a 2002 Chevrolet Monte Carlo and a 2009 Chevrolet Malibu. Like the motorcycle policy, each automobile policy provides per-person-per-occurrence coverage up to $100,000.

In their initial complaint, plaintiffs claimed that they were entitled to $200,000 in additional coverage for the accident, pursuant to the automobile policies' UIM provisions. According to the plaintiffs, the automobile policies provide UIM coverage for accidents involving the motorcycle when an insured under the automobile policies (here, Maso) is injured by a UIM. As plaintiffs read the motorcycle and automobile policies, the UIM coverage in each policy "stacks"[1] (*i.e.*, "inter-policy" stacking), such that defendant is liable up to the UIM limit of each policy, $300,000 in total, of which only $100,000 has been paid. Defendant filed a counterclaim seeking a declaration that its payment of the $100,000 UIM claim on the motorcycle policy satisfies in full its obligation to plaintiffs.

Plaintiffs then moved for leave to file an amended complaint. Each of the motorcycle and automobile policies provide up to $100,000 in uninsured motorist (UM) coverage. In the proposed first amended complaint, plaintiffs sought to add new claims that they were entitled to an additional $300,000 in UM coverage. In plaintiffs' view, the UM provisions in each policy are subject to inter-policy stacking, just as the UIM provisions. Moreover, plaintiffs contended that the UM and UIM provisions in each policy are subject to "intra-policy" stacking, such that plaintiffs

---

[1]"'Stacking' refers to an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided for within a single policy, as when an insured has one policy which covers more than one vehicle.'" *Jaudes v. Progressive Preferred Ins. Co.*, 11 F. Supp. 3d 943, 949 (E.D. Mo. 2014) (quoting *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. 2009) (en banc)).

have both a UM and a UIM claim on each policy. Accordingly, they sought UIM and UM coverage under all three policies, for a total obligation of $600,000.

At the time plaintiffs filed the motion for leave to amend, none of the policies were attached to the complaint. The Court denied leave to amend, holding that under Missouri's definition of a UM, plaintiffs' theory that Buske was a UIM (and had insurance for more than the statutory minimum amount) foreclosed a claim that she was simultaneously a UM. *See* Mo. Rev. Stat. § 379.203 (citing Mo. Rev. Stat. § 303.030); *Geneser v. State Farm Mut. Auto. Ins. Co.*, 787 S.W.2d 288, 291 (Mo. Ct. App. 1989) (clarifying *Cook v. Pedigo*, 714 S.W.2d 949, 952 (Mo. Ct. App. 1986)).

Plaintiffs have now filed the instant renewed motion for leave to amend, to which they attached the motorcycle policy.[2] As a matter of contract interpretation, they argue, the motorcycle and automobile policies each define a UIM as a UM, such that UIM and UM intra-policy stacked coverage is possible, and applies here. All of the policies also permit inter-policy stacked UIM and UM coverage, according to plaintiffs. Alternatively, they contend any ambiguity on either question must be resolved in favor of coverage.

**II. Legal Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give

---

[2] The automobile policies are attached to the summary judgment motions.

that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *United of Omaha Life Ins. Co. v. Honea*, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986).

**III.    Discussion**

It is undisputed that Maso qualifies as an insured person under all three policies. The parties also agree that coverage under the automobile policies is not foreclosed by the mere fact that Maso's motorcycle is not listed in the declarations in either of those policies. Because the parties have not fully briefed the question and it would not change the outcome, the Court assumes *arguendo* that the automobile policies do not define insured vehicles so as to exclude coverage for accidents involving two-wheeled vehicles, *i.e.*, motorcycles. *See Bush v. Shelter Mut. Ins. Co.*, 412 S.W.3d 336, 340–41 (Mo. Ct. App. 2013) ("Before stacking can be an issue, there must first be applicable coverages to stack. . . . Thus, in any

4

case potentially involving stacked coverages, the initial step for both insured and all potential insurers should be an analysis of whether there are multiple . . . coverages applicable." (quotation marks and citations omitted)). Finally, the parties raise only the UIM and UM coverage available under the three policies as potential avenues for recovery. It is this issue to which the Court confines its discussion.

Missouri law applies in this diversity case. *See Owners Ins. Co. v. Hughes*, 712 F.3d 392, 393 (8th Cir. 2013). In Missouri, "[t]he interpretation of an insurance policy is a question of law." *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. 2007) (en banc). "When interpreting the language of an insurance contract," a court is to "give[] the language its plain meaning." *Shahan v. Shahan*, 988 S.W.2d 529, 535 (Mo. 1999) (en banc) (citation omitted). Missouri courts "'appl[y] the meaning which would be attached by an ordinary person of average understanding if purchasing insurance . . . .'" *Farmers Ins. Co. v. Wilson*, 424 S.W.3d 487, 491–92 (Mo. Ct. App. 2014) (quoting *Seeck*, 212 S.W.3d at 132).

"An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Seeck*, 212 S.W.3d at 132 (quotation marks and citations omitted). "[I]f a contract promises something at one point and takes it away at another, there is [likewise] an ambiguity." *Miller v. Ho Kun Yun*, 400 S.W.3d 779, 786 (Mo. Ct. App. 2013) (quotation marks and citation omitted). "Absent an ambiguity, an insurance policy must be enforced according to its terms. If, however, policy language is ambiguous, it must be construed against the insurer." *Seeck*, 212 S.W.3d at 132 (quotation marks and citations omitted).

5

"The mere fact that the parties disagree as to the meaning of a term or clause in an insurance policy does not give rise to an ambiguity." *Hall v. Allstate Ins. Co.*, 407 S.W.3d 603, 607 (Mo. Ct. App. 2012) (citation omitted). To determine whether a policy contains an ambiguity, it must be "read as a whole, and the risk insured against is made up of both the general insuring agreement as well as the exclusions and definitions." *Midwestern Indem. Co. v. Brooks*, 779 F.3d 540, 546 (8th Cir. 2015) (citing *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 163 (Mo. 2007) (en banc)). That is so because "[d]efinitions, exclusions, conditions, and endorsements are necessary provisions in insurance policies." *Wilson*, 424 S.W.3d at 493 (quotation marks and citation omitted). However, "[p]olicy provisions designed to cut down, restrict, or limit insurance coverage already granted, or introducing exceptions or exemptions must be strictly construed against the insurer," *id.* at 494, and the insurer "also bears the burden of showing that the exclusion applies." *Wasson v. Shelter Mut. Ins. Co.*, 358 S.W.3d 113, 124 (Mo. Ct. App. 2011) (quotation marks and citation omitted).

Under the applicable Missouri canons of insurance construction, "the court must 'endeavor to give each provision a reasonable meaning and to avoid an interpretation that renders some provisions useless or redundant.'" *Jaudes*, 11 F. Supp. 3d at 949 (quoting *Dibben v. Shelter Ins. Co.*, 261 S.W.3d 553, 556 (Mo. Ct. App. 2008)). "[T]he fact that a definition is clear and unambiguous does not necessarily end the inquiry as to the existence of an ambiguity." *Id.* at 954 (citing *Hughes*, 712 F.3d at 399). "[I]f other policy provisions inject ambiguity into the meaning of [a term], then the policy remains ambiguous and must be construed against the insurer." *Id.* (quoting *Hughes*, 712 F.3d at 399). But "a court must not

6

'unreasonably distort the language of a policy or exercise inventive powers for the purpose of creating an ambiguity when none exists.'" *Id.* at 949 (quoting *Todd*, 223 S.W.3d at 163).

### A. Automobile Policies

With respect to the automobile policies, there are two issues that must be decided: (1) whether or not an insured's injury while operating the motorcycle is covered by the automobile policies' UM provisions and/or UIM provisions and (2) if UM or UIM coverage exists, whether the automobile policies permit or does Missouri public policy require intra-policy or inter-policy stacking of coverage obligations.

### (i) UIM coverage

Under a fair reading of the language of both automobile policies, an injury sustained while operating the motorcycle would, at most, qualify for UIM coverage. As plaintiffs point out, the base portions of both policies contain identical UM provisions, which define a UM as any motorist who is "[i]nsured by a bodily injury liability bond or policy at the time of the accident which provides coverage in amounts less than the limits of uninsured motorist coverage shown in the declarations." [Doc. ##25-2 at 12; 25-3 at 14] (capitalization and bolding removed throughout). As to the base portions of the automobile policies, therefore, a UIM is also a UM. If the base portions comprised the entire agreement between the parties, then simultaneous UIM and UM coverage might apply to the facts here.

But the automobile policies must be read as a whole, including the endorsements (*i.e.,* amendments) thereto. *Brooks*, 779 F.3d at 546. Both of the automobile policies include endorsements, each of which supersedes the base policy in question, modifying the coverage that defendant offered and plaintiffs agreed to.

7

One of the endorsements included in both automobile policies modifies the UM coverage by deleting the UIM-as-UM clause discussed above. [Doc. ##25-2 at 24; 25-3 at 26] In other words, the base policies include clauses that the endorsements then excise.

Plaintiffs claim that this means the automobile policies each purport to offer coverage by one clause but disclaim it by another. *See Miller*, 400 S.W.3d at 786. But that is not so; no ambiguity is created by the endorsements at issue here. The two clauses are not both operative but logically incongruous. Rather the effect of the endorsements is to strike out the UIM-as-UM clauses, excising them as if the words never appeared in the policies. *See Brooks*, 779 F.3d at 546; *Wilson*, 424 S.W.3d at 493. The endorsements do that unambiguously. When read as a whole, the contracts to which plaintiffs agreed do not provide UM coverage for a UIM accident. Because Buske was insured and qualifies, at most, as a UIM, the automobile policies' UM provisions are inapplicable here.

Further endorsements add UIM coverage to both automobile policies. [Doc. ##25-2 at 21–23; 25-3 at 23–25] Those endorsements provide UIM coverage for a motor vehicle "to which a bodily injury liability bond or policy applies at the time of the accident but [where] its limits for bodily injury liability are less than the limits of liability for this coverage." *Id.* Here, Buske had insurance with a policy limit of $50,000, less than that provided by either automobile policy. The UIM endorsements go on to state that a tortfeasor cannot be both a UIM and a UM: "An underinsured motor vehicle does not include a land motor vehicle . . . (4) defined as an 'uninsured motor vehicle' in your policy." *Id.* A plain reading of the UIM provisions in the automobile policies forecloses plaintiffs' argument that Buske was

8

simultaneously a UM and a UIM. The endorsements are also unambiguous that, as between the two categories, Buske qualifies, at most, as a UIM.

Consequently, the Court need not discuss intra-policy UM and UIM stacking within the automobile policies, because Buske does not qualify as a UM under either policy. All that remains with regard to the automobile policies is to determine if inter-policy stacking of UIM coverage is available.

### (ii) Inter-policy stacking

Though plaintiffs are correct that Missouri public policy forbids disclaiming stacked UM coverage obligations, *see Jordan v. Safeco Ins. Co. of Ill.*, 741 F.3d 882, 884 (8th Cir. 2014) (citing *Hall v. Allstate Ins. Co.*, 407 S.W.3d 603, 607 (Mo. Ct. App. 2012)), it is undisputed that no such policy prohibits an insurance contract from explicitly disclaiming stacked UIM coverage. *See id.* (citing *Long v. Shelter Ins. Co.*, 351 S.W.3d 692, 696–97 (Mo. Ct. App. 2011); *Lynch v. Shelter Mut. Ins. Co.*, 325 S.W.3d 531, 539 (Mo. Ct. App. 2010)). Accordingly, any anti-stacking clauses in the automobile policies' UIM provisions must be given full effect.

The automobile policies' UIM provisions contain explicit and unambiguous inter-policy anti-stacking clauses: "If any applicable insurance other than this policy is available to an insured person through us or any other member company of [defendant], the total amount payable among this policy and all other such policies shall not exceed the limits provided for the single vehicle with the highest limits of liability."[3] [Doc. ##25-2 at 23; 25-3 at 25]; *cf. Hall*, 407 S.W.3d at 610 ("This clause, written in a way to draw attention to itself, is clear, direct,

---
[3]Plaintiffs make much of the fact that the anti-stacking clauses in the automobile policies' UM provisions do not apply to the insured or the insured's family members. But that is of no moment because the only anti-stacking clauses applicable in the instant situation are those contained in the UIM provisions, which provide no such exceptions.

9

straightforward, and uniformly consistent with all the other language in the policy that unambiguously and unequivocally prohibits the stacking of coverages."); *Lynch*, 325 S.W.3d at 541 ("[R]edundancy is not the same as ambiguity. . . . This is not a situation where the policy allows stacking in one section and then reneges on that promise in another section, because neither of the provisions allow[s] stacking." (quotation marks and citations omitted)).

Consequently, because the motorcycle and automobile policies each offer the same per-person-per-occurrence coverage, $100,000, the automobile policies' UIM inter-policy anti-stacking clauses limit defendant's liability for Maso's accident to a single maximum payment of $100,000. Defendant has already tendered $100,000 to plaintiffs, which they accepted, so defendant has no remaining liability to plaintiffs under either of the automobile policies. Accordingly, defendant is entitled to summary judgment on plaintiffs' claims for UM and UIM coverage on both automobile policies.

### B. Motorcycle Policy

While inter-policy stacking across the three policies is foreclosed by the automobile policies, plaintiffs also seek intra-policy stacked UM and UIM coverage within the motorcycle policy. The motorcycle policy operates quite differently from the automobile policies: UM and UIM coverage can be, and here is, triggered simultaneously.

#### (i) UM coverage

The base portion of the motorcycle policy contains a UM provision, which, like those in the automobile polices, defines a UM as, *inter alia*, any motorist who is "[i]nsured by a bodily injury liability bond or policy at the time of the accident which

provides coverage in amounts less than the limits of uninsured motorist coverage shown in the declaration." [Doc. #23-1 at 14]  The motorcycle policy also defines a UIM as any vehicle "to which a bodily injury liability bond or policy applies at the time of the accident but its limits for bodily injury liability are less than the limits of liability for this coverage." *Id.* at 22.  Consequently, a UIM is also a UM under the motorcycle policy.

Unlike the automobile policies, however, the only endorsement to the motorcycle policy that modifies the definition of a UM does not excise the UIM-as-UM clause. *Id.* at 28–29.  By its plain text, the motorcycle policy offers potential intra-policy stacked UIM and UM coverage. *See Hente v. 21st Century Centennial Ins. Co.*, ___ S.W.3d ___, No. SD33408, 2015 WL 2089815, at *3 (Mo. Ct. App. May 4, 2015) ("[A]mbiguity has been found where the provisions for UM and UIM coverage are lumped together in a policy." (quotation marks and citation omitted)); *Maxon v. Farmers Ins. Co.*, 791 S.W.2d 437, 439 (Mo. Ct. App. 1990) (holding that where an insurance policy provides coverage for a UIM but also defines a UIM as a UM, intra-policy stacked coverage is available).  Here, intra-policy stacked coverage applies because Buske meets the definition of both a UM and a UIM; she had $50,000 in insurance, and the motorcycle policy provides both UIM and UM coverage up to $100,000.  Absent an effective anti-stacking clause, defendant is therefore liable to plaintiffs for $100,000 in unpaid UM coverage.

Accordingly, plaintiffs' proposed amended complaint is not futile, *see Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008), to the extent it states a claim for UM coverage under the motorcycle policy only.  The Court will grant plaintiffs' motion for leave to file the amended complaint. *See* Fed. R. Civ. P. 15(a).

### (ii) Intra-policy stacking

The motorcycle policy includes a declaration that explicitly forbids intra-policy stacking of UM and UIM coverage. [Doc. #23-1 at 5] Of course, the policy also unambiguously provides that wherever it "conflict[s] with the statutory laws of [plaintiffs'] state" it is amended to "conform to such statutes." *Id.* at 18.

The motorcycle policy's UM provision purports to disclaim any intra-policy stacking of multiple claims filed under that policy, *i.e.*, filing claims for both UIM and UM coverage for the same accident. *Id.* at 14. Here, two such claims exist, one for UM coverage and the other for UIM coverage, arising out of Maso's single accident. But Missouri public policy forbids such anti-stacking clauses in UM provisions; a clause purporting to do so is void *ab initio*. *See Jordan*, 741 F.3d at 884 (citing *Hall*, 407 S.W.3d at 607). Therefore, the intra-policy anti-stacking clause in the UM provision does not preclude recovery for both claims.

Also, the motorcycle policy's UIM provision contains two clauses at issue. The UIM provision purports to excise a UM from the definition of a UIM: "An underinsured motor vehicle does not include a land motor vehicle . . . (4) defined as an 'uninsured motor vehicle' in your policy." [Doc. #23-1 at 23] The UIM provision also explicitly forbids intra-policy stacking: "We will pay no more than the limits stated in the policy regardless of the number of . . . claims . . . involved in the occurrence." *Id.* By the policy's language, then, a successful claim for UIM coverage on the motorcycle policy should foreclose recovery on a UM claim for the same accident.

However, where an insurance policy offers coverage in one operative clause (*i.e.*, a clause not deleted or modified by an endorsement, in contrast to those in

12

the automobile policies) and then attempts to renounce that very coverage in another operative clause, the two clauses are logically incongruous, and they must be construed strictly against the insurer, in favor of coverage. *See Miller*, 400 S.W.3d at 786 ("[I]f a contract promises something at one point and takes it away at another, there is an ambiguity."); *see also Brooks*, 779 F.3d at 545; *Seeck*, 212 S.W.3d at 133. Here, plaintiffs paid a premium for UIM coverage, under which they recovered. And they also paid a separate premium for UM coverage, which offers coverage where, *inter alia*, the tortfeasor is a UIM.

The UIM provision's attempted exclusion of UIM coverage wherever the tortfeasor is also a UM is logically irreconcilable with the fact that the policy defines all UIMs as UMs. Both definitions cannot operate together because, were that so, plaintiffs paid a separate premium for UIM coverage that they could never use— because all UIMs are also UMs, against whom UIM coverage is excluded. Thus, the exclusion clause must be construed against defendant and in favor of intra-policy stacked UIM and UM coverage for Maso's accident. *See Durbin v. Deitrick*, 323 S.W.3d 122, 125 (Mo. Ct. App. 2010) ("[I]f policy language is ambiguous as to whether stacking is permitted, we construe the language of the policy against the insurer and in favor of stacking.").

Moreover, the UIM provision's explicit intra-policy anti-stacking clause is also ineffective. Plaintiffs paid a UM premium for, *inter alia*, a UIM-as-UM coverage clause (which remained in the policy despite the endorsements), and they paid a separate UIM premium for, *inter alia*, a clause that disclaims UIM-as-UM coverage. No reasonable person would pay extra for additional insurance that reduces, rather than expands, coverage. The two clauses are irreconcilable, and must be construed

13

against defendant and in favor of stacked UIM and UM coverage for Maso's accident. *See id.*

Accordingly, under the terms of the motorcycle policy, Buske was simultaneously a UIM and a UM, and defendant is liable for $200,000 of intra-policy stacked coverage for Maso's accident, $100,000 more than it has already tendered. The Court will grant summary judgment in favor of plaintiffs for $100,000 in unpaid intra-policy stacked UM coverage under the motorcycle policy.

\* \* \* \* \*

**IT IS HEREBY ORDERED** that plaintiffs' motion for leave to file an amended complaint [Doc. #22] is **granted**.

**IT IS FURTHER ORDERED** that the cross-motions for summary judgment [Doc. ##24, 26] are **granted in part and denied in part**.

A separate judgment will be entered.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 27th day of January, 2016.